IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Katharyn Sophia, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:17-1094-RMG |
| vs. | ) |
| Bradford V. Buchanan, Jr., | ) |
| | ) **ORDER** |
| Defendant. | ) |

This action, brought pursuant this Court's admiralty and maritime jurisdiction, involves claims of personal injury suffered by Plaintiff as a result of being struck by a pleasure boat operated by Defendant on the navigable waters of the United States. The parties have stipulated (1) Defendant is liable to Plaintiff for ordinary negligence; (2) Defendant is not liable for punitive damages; (3) Plaintiff's injuries were proximately caused by Defendant's negligence; and (4) Plaintiff did not contribute to her injuries. (Dkt. No. 21). The only issue remaining is the amount of damages Plaintiff is entitled to arising out of Defendant's simple negligence.

This matter was tried to the Court on June 20, 2018. After fully considering the testimony and other evidence offered at trial, the arguments of the parties, and the legal standards relevant to the claims and defenses of the parties, the Court makes the following findings of fact and conclusions of law.

### **Findings of Fact**

1.     Plaintiff and Defendant were in a group boating on the Ashley River in Charleston

County, South Carolina on May 12, 2015. Defendant was operating the boat and Plaintiff, then 24 years of age, was being pulled behind the boat on an inner tube. Defendant slowed the boat and Plaintiff's momentum took her into the boat's path, resulting in Plaintiff being struck in multiple locations on her lower torso by the boat's propeller. Plaintiff suffered severe pain, apprehension and fear as a result of her traumatic contact with the boat's propeller and was immediately transported the Medical University Hospital in Charleston for emergency medical care.

2. Plaintiff was determined to have over one dozen lacerations on her buttocks and legs, with the most severe injuries on her right calf and Achilles area. Her wounds were cleaned and stitches were used to close her lacerations. Plaintiff was then discharged the same day from the hospital with narcotic pain medications and a recommendation that she consult with an orthopaedic surgeon. Plaintiff suffered severe pain initially, which has subsided but never completely disappeared over three years after her injuries.

3. Plaintiff was initially immobilized by her injuries and required a wheel chair and later crutches to move around. She was out of work for several months and was required to move to her parents' home in Connecticut for assistance with her wound care and recovery.

4. After several months of recovery, which included numerous physician visits and physical therapy sessions, she was able to return to her former work in the hospitality industry. Her severe pain subsided but she continued to have episodes of pain, paresthesia, and numbness, and a number of her lacerations resulted in significant unsightly and unstable scars. Some of the scar tissue, particularly in her right calf, would spontaneously break down and bleed, and she experienced significant pain when standing for long periods of time. Plaintiff was also diagnosed

-2-

with a fracture of her proximal fibula and common peroneal nerve dysfunction of her right lower extremity. (Plaintiff's Exhibit T at 154-156, 194-196).

5. As the direct and proximate result of the events of May 12, 2015, her ongoing recovery, and persistent pain and breakdown of her scarred areas of lacerations, Plaintiff has suffered significant emotional trauma, mental anguish, shock, fright, and humiliation. The Court finds that some of her mental anguish will continue into the future, likely at a lesser degree as time passes.

6. Plaintiff was referred to a plastic surgeon, Dr. Peter de Vito, who recommended she undergo reconstruction surgery to address the most significant of the scarred areas of her lower leg and Achilles. He described Plaintiff's condition in his medical record as "extremely disfiguring, painful injuries and scars with significant functional deficit." (Plaintiff's Exhibit T at 182). Dr. de Vito testified that he believed Plaintiff is now ready for reconstructive surgery and estimated that it would require at least three different surgical procedures, each performed in a hospital under general anesthesia. Plaintiff testified that she is anxious to have the reconstructive surgery, but the cost of the surgery is presently financially prohibitive and she believes that her health insurance would not cover a sufficient amount of the costs. The Court finds the testimony of Dr. de Vito and Plaintiff on these matters to be credible. Further, the Court finds Plaintiff will suffer wage loss and significant pain and suffering from these multiple reconstructive procedures.

7. Following Plaintiff's injuries, she was seen by several orthopaedists, at least one of whom, Dr. Blake Ohlson, recommended certain future treatment options. These included knee surgery, decompression of her common peroneal nerve, and various medications and therapies.

(Plaintiff's Exhibit T at 194-96). Plaintiff has not pursued any of these therapies. Based on the Plaintiff's testimony at trial, the Court finds that most probably she will not pursue most of these therapies and treatments.

8. Plaintiff has continued to experience severe pain when standing on her feet for prolonged periods and has been recommended for a Morton's Neuroma resection to address this chronic foot pain arising from her injuries. The Court finds that Plaintiff will most probably pursue this treatment if she has the financial ability to do so.

9. Plaintiff's injuries forced her to miss several months of work with a total wage loss of $6,198.85. (Plaintiff's Exhibit U). The Court further finds that she will most probably miss additional work due to her multiple reconstructive surgeries for an additional loss of $2,000, bringing her total wage loss to $8,198.85.

10. Plaintiff has incurred past medical expenses of $23,195.54. (Plaintiff's Exhibit A).

11. Plaintiff offered the testimony of a life care planner, Ms. Sarah Lustig, who issued a report which concluded that Plaintiff's future medical expenses would total $695,868.00. (Plaintiff's Exhibit V). The life care planner relied on the certification of Dr. Ohlson for many of the most costly items in her plan. However, it is quite plain from the Plaintiff's trial testimony and her actions over the last three years that she has no intention to pursue many of these treatments and medications. The Court finds that most probably Plaintiff will incur the following future medical expenses:

  A. Scar Revision (surgeon, anesthesia and facility fees for three hospital based procedures): $22,500.

B. Morton's Neuroma Resection (surgeon, anesthesia and facility fees): $6,063.00.

C. Metatarsal Pad Cortisone Injection: $317.00.

D. Extra Strength Tylenol (for life): $2,254.00.

E. Physical Therapy to address residual knee dysfunction (evaluation and one year of therapy at 8-12 sessions): $1,852.00.

12. The Court finds that Plaintiff has not carried her burden to show more likely than not she would incur the balance of the projected costs included in Ms. Lustig's life care plan. The Court finds it unnecessary to address every item listed in the Life Care Plan, but notes that the greatest expense was related to nerve blocks (totaling over $320,000), which Plaintiff has never had ordered by any treating physician and most probably would not pursue if ordered. The Court also did not include the peroneal nerve surgery (total cost of $6,883) since Plaintiff made it clear in her trial testimony that she did not intend to pursue this treatment. Other costs related to medications (including Cymbalta, Flexeril and a specially compounded cream), which totaled over $158,000, have never been ordered by any treating physician and Plaintiff most probably would not take if prescribed. The Plaintiff, to date, has managed her pain and discomfort from her injuries with over the counter medications, exercise, and yoga.

13. The appearance and breakdown of Plaintiff's scars will most probably improve with her planned surgeries, but the disfigurement of her right leg will not be eliminated. She will continue to suffer from obvious disfigurement of her right leg immediately below the knee down to the Achilles.

14. Plaintiff has made a quite significant recovery from the terrifying injuries she

initially suffered. She has a long history of active athletic participation, including competitive sports in high school and college, and has returned to long distance running and yoga. These efforts are commendable, but do not fully eliminate her chronic, permanent injuries, including periodic pain, paresthesia and numbness. She will also be limited in her ability to enjoy outdoor and beach activities since her scars are aggravated by heat and sand.

## Conclusions of Law

1. In a maritime action, a Plaintiff who has suffered injuries proximately caused by Defendant's negligence can recover past and future lost wages, medical expenses, pain and suffering, scarring and disfigurement, mental anguish, and loss of enjoyment of life. *Pressley v. Kaberna*, C.A. No. 2:10-2204, Dkt. No. 73 (D.S.C. 2012); *Boan v. Blackwell*, 541 S.E.2d 242, 244-45 (S.C. 2001).

2. An award of prejudgment interest is typical in such cases and rests in the discretion of the Court. *Ameejee Valleejee and Sons v. M/V Victoria U.*, 661 F.2d 310, 313 (4th Cir. 1981). In setting the prejudgment interest rate, the Court may follow the interest rate prevailing commercially as indicated by the average yield of a United States Treasury Bill during the relevant time period. *McCutcheon v. Charleston Boatworks, Inc.*, No. 2:07-CV-4079-PMD, 2010 WL 2431017, at *6 (D.S.C. June 14, 2010). The average annual interest rate of the long term composit greater-than-ten-years, are: 2015: 2.63%; 2016: 2.52%; 2017: 2.79%; May 12, 2018 to Date of Judgment: 3.06%.

3. Based upon the Findings set forth above, the Court finds Plaintiff is entitled to an award of damages as a matter of law as follows:

    Past and Future Lost Wages                    $ 8,198.85

| | |
|---|---|
| Past Medical Expenses | $ 23,195.54 |
| Future Medical Expenses | $ 32,986.00 |
| Past and Future Pain and Suffering | $200,000.00 |
| Past and Future Mental Anguish | $300,000.00 |
| Scarring and Disfigurement | $100,000.00 |
| Loss of Enjoyment of Life | $ 50,000.00 |
| Award of Damages | $714,380.89 |
| Prejudgment Interest | $ 59,040.48 |
| Total Award | $773,421.37 |

## Conclusion

Based upon the foregoing, the Court hereby grants a total award of $773,421.37 for Plaintiff.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

June 21, 2018
Charleston, South Carolina